UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 11-253

AARON BENNETT                               SECTION "K"

## ORDER AND REASONS

Defendant Aaron Bennett pled guilty in this case 22 months ago to two counts of a bill of information:  (1) conspiracy to commit bribery of a public official in connection with a program receiving federal funds, and (2) bribery of a public official in connection with a program receiving federal funds.  Record Doc. No. 15.  According to his plea agreement, he faces maximum penalties of five (5) years in prison as to Count 1 and ten (10) years in prison as to Count 2, together with substantial fines.  Record Doc. No. 16.

While the public official whom he bribed has already been sentenced to a lengthy jail term (46 months) and pled guilty himself after Bennett's own guilty plea, United States v. Hingle, Crim. No. 11-252 "R"(5), Record Doc. No. 13, Bennett's sentencing has been delayed five times.  Record Doc. Nos. 19, 28, 34, 39 and 44.

During the 22 months since his guilty plea, Bennett has been free on a $50,000 personal surety bond originally set at his initial appearance by a magistrate judge of this court who has since retired.  The bond is subject to various non-monetary conditions. Among those conditions are (1) that Bennett not commit any federal, state or local crimes; (2) that he not enter any casinos or engage in any gambling activities; and (3) that

he restrict his travel to Louisiana, unless he obtained the prior approval of his supervising pretrial services officer to travel outside the state.  Record Doc. No. 13 at pp. 1-2.  After his guilty plea on the day after his bond was set, the presiding district judge released him on the same bond with the same restrictions.  Record Doc. No. 15.

On August 12, 2013, Bennett's supervisory pretrial services officer filed a Petition for Action on Conditions of Pretrial Release.  Record Doc. No. 45.  The petition alleged that Bennett had violated all three non-monetary conditions of the bond set out above as follows:  (1) He violated Mississippi state criminal law on November 9, 2011, only 27 days after his bond was set, and had been indicted by a grand jury in Hancock County, Mississippi, on a felony bad check insufficient funds charge.  (2) In committing the alleged criminal act in Mississippi, he entered a casino and participated in gambling activities that his bond prohibited.  (3) He traveled to Mississippi on that date without the prior approval of the pretrial services officer, who obviously never would have approved his interstate travel for gambling activities prohibited by his bond.

The Mississippi indictment, which has been admitted into evidence, states in pertinent part that Bennett:

> in the Second Judicial District of Harrison County, Mississippi, on or about November 9, 2011, with fraudulent intent, for the purpose of obtaining money and/or gaming credit, did unlawfully and feloniously utter to Imperial Palace MS, LLC, located at 850 Bayview Avenue, Biloxi, Mississippi, a certain check or marker, a copy of which is attached hereto as Exhibit "A," check or marker # 70133281, dated November 9, 2011, drawn upon Hancock Bank, account # 44347455, in the amount of Five

Thousand and 00/100 Dollars ($5,000.00), knowing at the time of uttering the said check or marker that he, the said William A. Bennett, the maker or drawer thereof, had not sufficient funds in or on deposit with the said Hancock Bank, for the payment of the said check or marker in full and all other checks, drafts or orders upon such funds then outstanding, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

The evidence establishes that the indictment has now been dismissed after Mr. Bennett's wife paid his 20-month old debt for him with money from her separate account.

Because the magistrate judge who originally set the bond retired 14 months ago and I was serving as criminal duty magistrate judge for the week in which the petition was filed, I issued a warrant for Bennett's arrest. Bennett's initial appearance was conducted on August 13, 2013, and at the request of his counsel, his detention and revocation hearing was conducted on August 16, 2013.

As an initial matter, 18 U.S.C. § 1343 governs the question whether a defendant like Bennett, who is awaiting sentencing after being convicted upon a guilty plea, should be released or detained in jail. The statute provides that "'the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained.' Detention, therefore, is the general rule. An exception is available[, however,] if 'the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).'" United States v.

Quirion, 808 F. Supp. 2d 343, 345 (D. Maine 2011) (quoting 18 U.S.C. § 3143(a))

(emphasis added).

When a convicted person who has been entrusted with freedom pursuant to a bond

while awaiting sentencing violates his bond, 18 U.S.C. § 3148 applies.  It provides in

pertinent part:

> (a) Available sanctions.–A person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court.
> (b) Revocation of release.– . . . . The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer–
>> (1) finds that there is–
>>> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>>> (B) clear and convincing evidence that the person has violated any other condition of release; and
>> (2) finds that–
>>> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>>> (B) the person is unlikely to abide by any condition or combination of conditions of release.
> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

(Emphasis added).

"The Court, therefore, must make two findings before ordering revocation and detention.  First, that there is <u>either</u> probable cause to believe that Mr. [Bennett] committed a crime while on release <u>or</u> clear and convincing evidence that he violated any other condition of release.  And second, <u>either</u> that there is no condition or combination of conditions that will assure that Mr. [Bennett] is not a danger to the safety of the community <u>or</u> that he is unlikely to abide by the conditions of his release."  <u>Quirion</u>, 808 F. Supp. 2d at 346 (emphasis added).

In this case, the first of these two findings is easily made.  Even if there was no evidence establishing probable cause to believe that Bennett committed a crime in Mississippi, I would find under § 3148(b)(1)(B) that Bennett violated conditions of his release.  The admissions and stipulations received at the hearing are clear and convincing evidence that he traveled to Mississippi without the prior approval of his pretrial services officer, that he entered a casino and that he engaged in gambling activities.  The court has heard evidence today from Bennett's wife that he again violated the bond condition prohibiting him from entering a casino as recently as a few weeks ago in July 2013, when he and his wife went to Harrah's Casino in New Orleans.

More seriously, however, a grand jury sitting in Hancock County, Mississippi, found via indictment, which has been admitted into evidence, that there is probable cause to believe that Bennett committed the state crime of fraud by passing a bad check in the

amount of $5,000.  The stipulations and evidence submitted at Bennett's revocation/ detention hearing before me confirm that finding.  The fact that Bennett has now obtained dismissal of the indictment by having the debt paid by his wife is irrelevant to the question of whether there is now or was then probable cause to believe that he committed the alleged state crime.  Through the stipulations and admissions made at the hearing, indeed by implicitly recognizing, albeit more than 20 months later, through making his recent payment to cover his bad debt, that there were insufficient funds in the account at the time the check was uttered, Bennett has conceded the essential elements of the acts charged by the Mississippi grand jury.  Like the Mississippi grand jury, I find that there is probable cause to believe that Bennett committed a state crime while on release.  Accordingly, a rebuttable presumption arises under 18 U.S.C. § 3148(b) that no condition or combination of conditions will assure that Bennett will not pose a danger to the safety of any other person or the community.  This presumption would satisfy the second finding mandating revocation of Bennett's bond and his detention pending sentencing, unless Bennett rebuts the presumption with a satisfactory evidentiary showing.  I find that Bennett has failed to rebut that presumption.

At the hearing, defense counsel and the pretrial services officer proposed new, stricter bond requirements as a means of rebutting the presumption imposed by 18 U.S.C. § 3148 that Bennett should now be detained.  I am <u>not</u> persuaded that the proposed enhanced restrictions will assure that the community will be protected from the economic

danger posed by his fraudulent check-passing and debt-producing activities caused by his gambling or his urge to go into casinos.

Personal characteristics, including a propensity for debt-inducing gambling that often serves as a gateway to the kind of fraud of which Bennett was accused by the grand jury in Mississippi, are factors to be considered in any determination of bond, as opposed to detention.  18 U.S.C. § 3142(g)(3).  Bennett admitted to the pretrial services officer during his 2011 initial interview leading to the original bond that he gambles regularly, perhaps even "excessively," but that he had never sought or received counseling or treatment for gambling addiction, which was the reason for imposition of the no entering casinos/no gambling condition in his bond.  At the revocation/detention hearing, the pretrial services officer testified that she was not aware that Bennett ever sought such treatment or counseling during his almost two years on bond and that the treatment he received at Odyssey House in New Orleans at the direction of his pretrial services officer was for his cocaine abuse and did <u>not</u> include treatment for gambling problems.  The home incarceration component of the proposed new bond leaves open the risk that Bennett will engage in gambling or other fraudulent activities like his bad-check activities in Mississippi via telephone, computer, smart phone, social media or third-party assistance, all of which his wife testified are available in the home where he proposes to be incarcerated, in the same way he arranged to have the Mississippi debt paid off once he was indicted and arrested.  In the absence of any evidence that Bennett's attraction to

casinos can be controlled, I cannot conclude that any condition or combination of conditions will reasonably assure community safety.

In addition, I find that the proposed surety and third-party custodian, Bennett's wife, who would be responsible to the court for the financial obligations and for monitoring Bennett's compliance with any new, stricter bond, is not acceptable.  18 U.S.C. § 3142(g)(4).  Her own testimony at the hearing established that she is not financially capable of covering the bond.  The bond alternatives the defense proposed, when compared to what the pretrial services officer proposed, are weak substitutes–too weak to serve the purposes of the new $100,000 cash or property bond proposed by the pretrial services officer.  I find that Bennett's wife would be totally ineffective as a third-party custodian.  She is not at home during the business day.  She knew about her husband's trip to Mississippi without pretrial services approval, knew it was prohibited, knew about the bond's other restrictions against gambling and entering casinos, and did nothing about Bennett's violations, then participated as an enabler by accompanying her husband on the second, more recent trip to Harrah's Casino in New Orleans last month.

Another factor to be considered is the nature of the penalties Bennett faces in this court when his sentencing day arrives as to the two bribery-related counts to which he pled guilty.  18 U.S.C. § 3142(g)(1).  The 46-month prison term already received by the public official whom Bennett admittedly bribed is an indication of the prison time Bennett realistically faces when his sentencing date arrives.  The possibility that

Bennett's sentence will be greater is illustrated by the fact that his accomplice's sentence was imposed as to just one count, which is virtually identical to Count 1 of Bennett's guilty plea, while Bennett will also be sentenced as to a second count that carries double the maximum prison sentence of Count 1.

Even if it could be shown that Bennett is not a danger to the community, a presumption that defendant has failed to rebut, I find that he is unlikely to abide by any new conditions imposed upon his release.  Bennett's Mississippi bond violations, in blatant disregard of a court order setting bond conditions only 27 days after they were imposed, and the admission the court finally heard today from his wife that he also violated the conditions yet again by entering Harrah's Casino only four weeks ago, exhibit a high degree of arrogance, irresponsibility and flaunting of the authority of both this court and the laws of Mississippi.  He has proved that he is unable to stop himself from going into casinos, despite the court's order that he refrain, and he proved it again this past July.  Bennett admitted to the pretrial services officer in his initial interview that he has a gambling problem, but he has taken no action to address it.  He concealed his Mississippi bond violations from his pretrial services officer for more than 20 months, a lie by omission, leaving her to discover it on her own through an independent criminal records inquiry.  He concealed his July 2013 violation in the same way.  He made no attempt to cover the bad check informally, until his victim was compelled to seek criminal prosecution, and he was caught via indictment more than 20 months after the

fact.  He then paid his way out of that indictment with money provided from his wife's separate account.  This kind of attitude of privilege and selective use of his resources to get out of trouble, but only after he is caught, indicates a belief that he is somehow entitled to special treatment and serves as an illustration of his hubris and as a predictor that he will <u>not</u> abide by any new restrictions.

For all of the foregoing reasons, the evidence presented at the revocation and detention hearing leads the court to find probable cause to believe that Bennett committed a state crime while on release and that there is clear and convincing evidence that he violated conditions of his release, not on just one occasion in Mississippi as charged in the petition, but also on another occasion in recent weeks just a few blocks from his home in New Orleans.  I find that no condition or combination of conditions will reasonably assure that the community is safe from Bennett's gambling and bad debt activities and that, in any event, he is unlikely to abide by the proposed conditions of release.  I therefore conclude that these findings mandate the revocation of Bennett's presentencing bond and release order and his detention pending the sentencing hearing. Accordingly,

**IT IS ORDERED** that the bond and order setting conditions of release is **REVOKED** and the defendant is **DETAINED** pending imposition of sentence.

The defendant is committed to the custody of the United States Marshal or her designated representative for confinement in a corrections facility separate, to the extent

practicable, from persons who have already been sentenced and are serving sentences or being held in custody pending appeal.  The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for purposes of an appearance in connection with a court proceeding.

New Orleans, Louisiana, this ____16th____ day of August, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE